## Al Shrum v. The State.

### No. 5712.   Decided April 21, 1920.

### Rehearing Denied June 16, 1920.

1.—Murder—Manslaughter—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter an exception was reserved to the court's charge of manslaughter because it did not specifically mention that defendant had the right to shoot from the viewpoint of manslaughter, if the shot of the others produced pain or bloodshed, this contention is untenable and without merit, under the evidence of the instant case, and such charge would have resulted in a reversal of the case, as it would have limited the right of self-defense; besides, the court instructed properly upon manslaughter, murder, and self-defense, and defendant was convicted of manslaughter.

2.—Same—Charge of Court—Self-defense.

Where appellant contended that the court limited self-defense as only against the deceased, but it appeared from the record that the court expressly instructed the jury that defendant had a right to shoot in self-defense not only against deceased but any other person who was engaged in shooting at him, there was no reversible error.

3.—Same—Charge of Court—Picketing—Strike—Employees.

Where, defendant objected to the charge of the court because it did not inform the jury that the defendant had the legal right to go to the scene of the killing for the purpose of picketing or talking to the employees of the company, in order to induce them to quit work and join in the strike, but it appeared from the record that the court did so charge, etc., there was no reversible error. Following Shannon v. State, 35 Texas Crim. Rep., 2, and besides, gave instructions altogether favorable to the defendant and his case, there was no error.  -

4.—Same—Provoking Difficulty—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter, a charge on provoking the difficulty was called for by the evidence both by the State and defense and was entirely a proper charge, especially in view of the feature of self-defense and manslaughter, there was no reversible error.

5.—Same—Newly Discovered Evidence—Practice on Appeal—Affidavit.

Where, the motion for new trial, on the ground of newly discovered evidence, was not supported by affidavit of the alleged witness, the same cannot be considered.

6.—Same—Evidence—Res Gestae.

Where, upon trial of murder and a conviction of manslaughter, defendant and his companions claimed that they only went out to the scene of the difficulty on a peaceful mission, but the State claims a contrary theory, there was no error in admitting testimony that defendant's companion, immediately upon reaching the scene, began the difficulty.

7.—Same—Evidence—Bill of Exceptions.

Where, upon trial of murder and a conviction of manslaughter, the State was permitted to show that the two parties carried by defendant in his car to the scene of the tragedy immediately commenced the assault when they reached there, there was no reversible error, as defendant contended that he and his companions went there on a peaceful errand.

8.—Same—Argument of Counsel—Bill of Exceptions.

Where the bill of exceptions failed to allege the statement imputed to the counsel for the State to have been verified, but only showed that the trial judge instructed the jury not to consider the remarks of State's counsel, there was no reversible error.

9.—Same—Evidence—Self-serving Evidence—Flight.

Where, upon trial of murder and conviction of manslaughter, the State's testimony showed that after the fatal difficulty defendant immediately left the scene and went away some eighteen miles therefrom, as defendant claims, to visit his parents, there was no error in excluding testimony that en route on his return he stated to the witness, seeing an offer of reward for defendant's arrest, that if he, the witness, would take him to the sheriff's office he would get the reward. This was self-serving testimony and inadmissible.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Oscar H. Calvert: Puckett, Mounts & Newberry, Mike T. Lively* and *Baskett & DeLee,* for appellant.—On question of court's charge on self-defense: Franklin v. State, 30 Texas Crim. App., 628; Franklin v. State, 34 Texas Crim. Rep., 286; Reed v. State, 11 Texas Crim. App., 510; Drake v. State, 45 Texas Crim. Rep., 273; Vam v. State, 45 id., 444; Price v. State, 46 id., 80; Goodman v. State, 47 id., 392.

On question of provoking difficulty: Kees v. State, 44 Texas Crim. Rep., 543; Chambers v. State, 46 id., 65; Pedro v. State, 48 id., 407; Arismendis v. State, 41 id., 377.

On question that defendant may prove his reason for flight: Arnold v. State, 9 Texas Crim. App., 439; Walters v. State, 17 id., 229; Lewallen v. State, 33 Texas Crim. Rep., 414.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for manslaughter, the term of punishment being assessed at three years in the penitentiary.

The court charged upon murder, manslaughter, self-defense and provoking a difficulty. The charge on self-defense was from the standpoint of apparent and real danger as presented to defendant's mind at the time of the occurrence. This included not only the danger from an attack by deceased but also another party who was with him. The jury was informed that if defendant's life was in danger from either standpoint, he would be entitled to his protection under the law of self-defense. The charge to the jury was not limited to the act of deceased, but included those who were acting with him if such facts were shown. The theory of the defense was that he was shot at and shot by two men, deceased being one and aided by another party, both firing shotguns; that they were in a truck owned by the electric company for whom the deceased and others were working. That these parties had been employed by the company, and in such employment were working in the business of the company, and that their employment arose out of the fact and on account of a strike by those who had been theretofore employed by the company. There was a strike by other employees, and is what defendant terms a sympathetic strike by others engaged in some character of work but not embraced among the strikers, and that those who were favoring the strike and aiding and engaged in it did what they called "peaceful picketing," that is, they would go to the employees of the compnay who had taken the places of the strikers as employees and talk with them and persuade them if they could, at least sought to persuade them to quit working for the company and join in the strike. There had been some trouble arising between the employees of the company who were substituted for strikers and the strikers. The company also employed parties who are denominated guards, and they were armed. On the morning of this trouble appellant and two others went to the scene of the difficulty for the purpose of engaging in this peaceful picketing. Defendant carried a shotgun and it seems from the record the other two carried bludgeons. Upon arriving at the scene of the trouble and where the employees were at work, two of the parties left the car, in which they accompanied appellant, and engaged in trouble or difficulty with one or more of the employees, striking with a club. This seems to have precipitated the difficulty and the shooting began, several shots being fired. Appellant was standing at his car at the time of the difficulty, and his contention is, supported by his evidence, that while standing

there he was shot at by deceased and another man who was in a truck owned by the company, that they struck him in two or three places, and that he returned the fire killing the deceased, and that there were a number of shots fired. The theory of the State was that appellant as soon as he reached the point where his car was stopped, just across the street from the truck and the employees of the company, jumped from his auto and shot deceased, and the shooting became general, and that the two other men who went down the street engaged in a difficulty with another employee of the company; that these three men went from a point in the city to where these parties were at work and immediately upon arriving there these series of difficulties occurred, the State's theory being that they went for that purpose, and that they were all participants or conspirators in what was done. Appellant testified he carried his gun to protect himself in case of trouble as there had been trouble between the guards employed by the company and some of the "peaceful picketing" strikers, and that he carried this gun to defend in case an attack was made upon him by those people.

An exception was reserved to the court's charge on manslaughter because it did not specifically mention that appellant had the right to shoot, from the view point of manslaughter, if the shots of the others produced pain or bloodshed. We are of opinion this contention is without merit. If as appellant contended he was fired at by the other two parties from the truck with double barrel shotguns at close range, and he fired in return to protect his life, the question would be purely self-defense, and to have carved out of this testimony as a fact that he was struck several times and make that the cause of manslaughter, would have resulted, upon exception, in a reversal of the case, if the court had limited his right of self-defense by such charge on manslaughter. There was no question of the fact that the shooting occurred. The issue between them was who began this shooting. The State's evidence clearly shows appellant began shooting at once upon reaching the scene, and the employees or guards shot in self-defense. His theory was that when the difficulty occurred down the street where his two comrades struck the employee with a billet this produced the occasion of the shooting and that he was then acting in self-defense: that he was not engaged in nor acting in concert nor agreement with those who struck the men down the street. His defensive theory seems to exclude the idea of assault on him for any other purpose except that of killing him by shooting him with a couple of shot guns. This was a direct attempt from his viewpoint to take his life, the parties being in such relation to his person that is could be done, and but for the protection of the auto he would have been killed. This would exclude aggression on the part of appellant and place it entirely upon deceased and his companions. If the State was right it would place the aggression on the part of appellant in connection with their purpose in going out there, and this difficulty between his two companions and

the men engaged in the trouble when they were struck with the clubs. The court however charged on manslaughter, favorably to defendant, and the jury found in his favor acquitting him of murder. The charge on self-defense, in this connection, was based upon the proposition and theory that appellant was shot by deceased and his companions at close range, and with shotguns, and that they continued to shoot and did fire several shots. It occurs to us if the charge specified pain and bloodshed under such circumstances it would have been an unsafe limitation upon appellant's right under his theory and would practically have deprived him of his self-defense theories.

Nor do we think there was any merit in appellant's contention that the court limited self-defense as only against the deceased. The court expressly instructed the jury that he had a right to shoot in self-defense not only against deceased but any other person who was engaged in shooting at him. Exception by appellant to the charge is not sustained by the expressions in the charge. The court instructed the jury that appellant had the right of self-defense if assaulted by deceased or any other person, etc.

Another exception was reserved to the charge because it did not inform the jury appellant had the legal right to go to the scene of the killing for the purpose of picketing or talking to the employees of the company in order to induce them to quit work and join in the strike. The court in the main charge did not so instruct the jury, but gave appellant's requested instruction presenting not only that question but further that he had the right to arm himself etc., and to go to the place where the trouble occurred, and to defend himself against any attack that might be made upon him, and that such action would not abridge his right of self-defense. His theory of the case was, and he so testified, that he went there to peacefully talk to these people and to induce them to quit work, and that in so doing armed himself to protect his person from any assault that might be made against him. The charge as given is in accordance with the rule laid down in Shannon v. State, 35 Texas Crim. Rep., 2. This case has been followed by numerous cases. He also gave another special charge requested by appellant that although he went with Rob Roy and Bohanan to the place of the trouble, and that though they engaged in a combat with an employee of the company, that he, appellant, would not be responsible unless such conduct was a part of the agreement to do what was done, and that if they engaged in an independent enterprise of this sort without his concurrence or knowledge, that he would not be responsible for it, and that the jury should find him not guilty from that viewpoint if they found the facts as indicated in the charge. He also instructed the jury that if appellant shot originally in self-defense he had a right to continue to shoot until all danger was passed. Nor do we think there was error in the court's charge upon the issue of provoking a difficulty. We think this question was in the case as shown by the testimony, even that introduced by the appellant. The

only reason why this question was not in the case would arise from the fact that appellant was the aggressor from the beginning and pushed the difficulty to its final conclusion. This he denied, claiming that while he went there he did not go for the purpose of bringing on the difficulty but to defend himself in case it was brought upon him without legal excuse. The court's charge on provoking a difficulty we think was called for by the facts, and it was a correct charge, that is, it charged both the theory of provoking a difficulty for the purpose of killing, or for the purpose of not killing. Upon this theory of the case manslaughter become an issue, and not only was it an issue, but provoking the difficulty was in the case by reason of the facts pertaining to self-defense. The facts authorized the court to limit and abridge the right of self-defense by a charge on provoking the difficulty if the jury should take that view of the testimony. The evidence suggested the issue. We are of opinion that this case was fairly tried and without reversible error.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 16, 1920.

DAVIDSON, PRESIDING JUDGE.—On a former day of the term the judgment herein was affirmed. It is now urged that the court committed error in various and sundry ways in the affirmance. It is not the purpose of this opinion to review the questions decided in the original opinion with reference to charges.

Appellant complains that the court was in error in not reversing the judgment on the ground of newly discovered evidence as shown by the affidavit of Parkinson attached to the motion for a new trial. We have examined this motion for new trial and fail to find such affidavit signed by Parkinson. This matter was examined before the original opinion was written. As we understand the original presentation of the case to this court claimed newly discovered testimony was supported by the affidavit of Harrington. We failed to find an affidavit of Harrington in the record and the question was not discussed.

There is a bill of exceptions to the introduction of testimony of the witness Askins, a police officer, who testified that he went to the scene of the killing; that it took him about three minutes after he received the call to ride to the scene of the difficulty; that when he arrived he arrested a man by the name of Rob Roy who had on a soldier's uniform, and also had the big end of a billiard cue in his hand. The court says he admitted this as a circumstance to identify Rob Roy as the person who struck Allen LeCroy with a billiard cue. The evidence shows that appellant, Roy and Bohanan went in a car driven by appellant to the scene of the homicide, as appellant says, for the purpose of "peacefully picketing." There seems to have been a strike on

hand, and their purpose was to induce these people to join the strike. The assaulted parties were in the employee of the telephone company. Immediately upon reaching the scene, the State's theory of the case is that Roy and Bohanan alighted from the car, went down a short distance to where LeCroy and Ballard were at work for the telephone company, and that LeCroy was struck by Roy with the butt end of a billiard cue or a club, and that Ballard was struck at by Bohanan, and at the time this occurred appellant fired upon and killed Fisher. A few minutes afterwards the officer Askins arrived and arrested Rob Roy. He had the big end of a billard cue in his hand. This testimony was admissible, even as a part of the *res gestae*. Appellant seems to predicate his idea of the inadmissibility of this testimony upon the theory that he and his friends only went out there on a peacefully picketing mission and not for the purpose of engaging in serious trouble unless they were attacked by the employees of the telephone company. That was their view of the case, but it afforded no ground of objestion to the State's testimony which showed the contrary. These were matters for the consideration of the jury and not the subject of objections to the admission of testimony.

There is also a suggestion that after Roy struck LeCroy and knocked him down, that he dropped the billiard cue, and just about the time that Askins undertook to arrest him he picked it up. We do not think this affords any objection to the introduction of the testimony. It would make no difference so far as the attack upon LeCroy was concerned whether he afterwards threw the billiard cue down.

It is also urged as error that the State was permitted to show that the two parties carried by appellant in his car to the scene of the tragedy went to where LeCroy and Ballard were at work near by and assaulted them with clubs, one striking LeCroy and the other striking at Ballard. The judge would not certify to the correctness of the alleged statement set out in the bill of exceptions as shown by his qualification. He says the evidence was ample to show that the matters occurred as indicated. We are of opinion there could be no valid objection to the introduction of this testimony. This was but part of the testimony relied on to show the converse of appellant's contention of peaceful picketing. It was admissible for the State to show that these parties who went to the scene of the trouble in the car with appellant, left the car immediately upon it stopping at the point it did stop and in going to and making an assault upon these two employees of the telephone company, as evidence from which the jury might conclude the parties were acting together.

It is also insisted that the court erred in not reversing the judgment because of remarks indulged by counsel for the prosecution. The court qualifies this bill by stating that he instructed the jury not to consider the same. The statements imputed to counsel in the bill of exceptions are not verified otherwise than by the statement of the judge that he instructed the jury not to consider the remarks. The

bill does not verify the statements. It is true that they urged as ground of objection that the testimony did not justify the remarks, but these are only stated as grounds of objection and not as matters of fact. Grounds of objection will not be treated as statement of facts. The bill must show, if it is desired to have the matter reviewed, that there was no testimony which justified the remarks imputed to counsel.

There is another matter urged by appellant. After the fatal difficulty appellant immediately left the scene and during the day went to Cedar Hill eighteen miles from the city of Dallas, he says, to visit his parents. After making this visit and enroute on his return to the city of Dallas he was in a car with a Mr. Caffey. Caffey called his attention, he says, to the fact there was an offer of five hundred dollars for his arrest. Appellant then offered to prove that he told Caffey that if he, Caffey. would take him to the sheriff's office that he would surrender in order that Caffey might obtain the five hundred dollars reward. Caffey did not see proper to do so. Appellant desired to introduce this; the purpose for which it was sought, as we understand the bill, was to explain his flight in going to the country to see his parents. This would be a self-serving declaration made to Caffey which in no way is explanatory of his going to Cedar Hill, but an offer to benefit Caffey if Caffey would take him to the sheriff's office. It did not explain or attempt to explain why he left the scene of the tragedy and went to the country. He did explain his visit to the country, which was admitted on the theory that he went to see his parents; that his mother had been sick, and he went to see her.

We have mentioned these matters because counsel urge in their rehearing they were of moment. We did not think so upon the original hearing and did not discuss them, and upon a review of the matters we are still of opinion there is no merit in any of the contentions.

The motion for rehearing will be overruled.

*Overruled.*